UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------------X
ANDREW PETROZZIELLO, on behalf of
himself and all others similarly situated,

        Plaintiff,

v.

FYRE MEDIA, INC., a corporation;

FYRE FESTIVAL LLC, a limited liability
company;

JEFFREY ATKINS, individually and as Co-
Founder of Fyre Media, Inc; and

BILLY MCFARLAND, individually and as Co-
Founder of Fyre Media, Inc.

        Defendants.
------------------------------------------------------------X

Case No.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF (1) NEW JERSEY CONSUMER FRAUD ACT- DECEPTION BY OMISSION; (2) NEW JERSEY CONSUMER FRAUD ACT- DECEPTION BY- DECEPTION BY MISREPRESENTATION; (3) BREACH OF CONTRACT; AND (4) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

<u>**JURY TRIAL DEMANDED**</u>

      Plaintiff, Andrew Petrozziello, brings this class action on behalf of himself and all others similarly situated, alleging violations of federal law and New Jersey law against Defendants and, for his Class Action Complaint ("Complaint"), alleges and says:

      1.     Plaintiff brings this class action to recover compensatory damages, treble damages, and other appropriate relief for the unlawful, wrongful and/or fraudulent and deceptive acts or practices of Defendants, Fyre Media, Inc., Fyre Festival LLC, Jeffrey Atkins and Billy McFarland (collectively the "Defendants"), in connection with the organization,

advertising, marketing, promotion, and sale of tickets for Fyre Festival. Fyre Festival was promoted as a once-in-a-lifetime luxury music and art festival on a remote island located in the Exumas, Bahamas. The festival was to take place over the course of two weekends and included musical performers such as Blink 182, Disclosure, Major Lazer, G.O.O.D Music, Rae Sremmurd, Migos, Lil Yachty, Skepta, DAYA, Klingande, Matoma, Kaytrandada, Claptone and Le Youth among others. Weekend 1 was scheduled for April 28-30 and Weekend 2 was scheduled for May 5-7. Lower-tiered ticket packages were offered and sold for approximately $1,100 per person per Weekend; however, this price increased to several thousands of dollars as the event drew closer. Fyre Festival also advertised and sold higher end packages ranging from $12,499 per person per weekend to $49,999 per person per weekend. All packages included complimentary roundtrip flights between Miami, Florida and the island in the Exumas, Bahamas, festival tickets and lodging on the island. Fyre Festival attendees were responsible for their own travel arrangements from their individual home states to Miami, Florida. Additionally, Festival attendees could amplify their experience by purchasing excursions and other VIP events in addition to their ticket.

    2.  Fyre Festival was promoted heavily on the internet and through social media platforms like Facebook, Instagram and YouTube. As part of its viral campaign, Fyre Festival enlisted the help of Instagram influencers including Kendall Jenner, Bella Hadid and Emily Ratajkowski. As a result, thousands of tickets were sold to both weekends.

    3.  Fyre Festival attendees began to arrive on the remote island on the eve of Fyre Festival on Thursday, April 27, 2017. Festival attendees expected a luxury experience; however, they instead encountered the opposite. The island woefully lacked basic infrastructure such as fresh water, plumbing and lodging. As a result, on Friday, April 29,

2017, the Fyre Festival organizers removed all content from FyreFestival.com and posted a message stating the following:

Fyre Festival set out to provide a once-in-a-lifetime musical experience on the Islands of the Exumas.

Due to circumstances out of our control, the physical infrastructure was not in place on time and we are unable to fulfill on that vision safely and enjoyably for our guests. At this time, we are working tirelessly to get flights scheduled and get everyone off of Great Exuma and home safely as quickly as we can. We ask that guests currently on-island do not make their own arrangements to get to the airport as we are coordinating those plans. We are working to place everyone on complimentary charters back to Miami today; this process has commenced and the safety and comfort of our guests is our top priority.

The festival is being postponed until we can further assess if and when we are able to create the high- quality experience we envisioned.

We ask for everyone's patience and cooperation during this difficult time as we work as quickly and safely as we can to remedy this unforeseeable situation. We will continue to provide regular updates via email to our guests and via our official social media channels as they become available.

-The Fyre Festival Team

4. Fyre Festival attendees who had not yet made it to the island in the Exumas, Bahamas were forced to make their own lodging arrangements in Miami, Florida.

5. Later in the day on April 29, 2017, the Fyre Festival organizers released another statement on FyreFestival.com. In the statement, the organizers admitted that they were overwhelmed and incapable of providing the experience that it promised the festival's attendees. The Fyre Festival organizers also stated that Fyre Festival would be postponed until 2018 and would take place at a United States beach venue. Additionally, the Fyre Festival organizers stated, "All festival goers this year will be refunded in full. We will be working on refunds over the next few days and will be in touch directly with guests with more details. Also, all guests from this year will have free VIP passes to next year's festival." To date, no refunds have been issued.

6. While Defendants claim that the postponement of Fyre Festival was unforeseeable, Defendants knew well in advance that the festival was severely under-equipped and could not meet the expectations of the festival attendees. Defendants were well aware that the island had no infrastructure and could not safely accommodate festival attendees. Specifically, the few contractors that were retained by Defendants had refused to work because they had not been paid. It is also alleged that prior to the event that Defendants advised the musical performers not to come to Fyre Festival. As these problems started to come to light in the month leading up to Fyre Festival, many people began to question the intentions of the Defendants. Despite their knowledge, Defendants continued to promote Fyre Festival heavily on the Internet and through their social media channels.

7. By continuing to promote Fyre Festival knowing full well that they could not deliver what they had promised their paying customers, Defendants engaged in unlawful, deceptive and misleading conduct, in violation of applicable law. Fyre Festival attendees who had not yet made it to the island in the Exumas, Bahamas were forced to make their own lodging arrangements in Miami, Florida. The only reason the Fyre Festival attendees flew to Miami, Florida in the first place was to get on their complimentary flight from Miami, Florida to the island in the Exumas, Bahamas which was included in their Fyre Festival ticket package.

8. As a result of Defendants' unlawful, deceptive and misleading conduct, Plaintiff and the members of the Nationwide Class and/or the New Jersey Class have suffered ascertainable losses while Defendants profited and were unjustly enriched. Under federal law and New Jersey law, Plaintiff and the members of the Class are entitled to be compensated for the money they spent on (1) their Fyre Festival ticket package; (2) travel from their individual

home states to Miami, Florida; and (3) lodging expenses as a result of being stranded in Miami, Florida.

9. Plaintiff brings this class action on behalf of himself and other similarly situated consumers who purchased tickets to Weekend 1 of Fyre Festival. Based on violations of federal and New Jersey laws, as alleged herein, Plaintiff seeks monetary relief compensatory damages, punitive damages, treble damages, restitution, refunds, disgorgement of ill-gotten gains, and all other relief as may be appropriate at law or equity.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d)(2) and 18 U.S.C. § 1964(c). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.00 and is a class action in which there are in excess of 100 Class members and some members of the Class are citizens of a state different from Defendants.

11. This Court has personal jurisdiction over Defendants because each of the Defendants do business in New Jersey. At all times relevant to this action, Defendants advertised, marketed, promoted and sold tickets for Weekend 1 of Fyre Festival in New Jersey and Defendants have sufficient minimum contacts with this State and/or sufficiently availed themselves of the markets in the State of New Jersey through their promotion, sales, distribution, and marketing within this State to render the exercise of personal jurisdiction by this Court permissible and consistent with due process.

12. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) and 18 U.S.C. § 1965 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and because Defendants conducted business here.

-5-

#9118887.1

## PARTIES

13.     Plaintiff, Andrew Petrozziello, is a resident of Cranford, New Jersey. Plaintiff first became aware of Fyre Festival in and around December 2016, after talking to a friend who had seen an Internet post that was a part of Defendants' viral marketing campaign. As a result, Plaintiff went to Fyre Festival's Instagram account (@FyreFestival). After seeing the promotional content on Fyre Festival's Instagram account, he followed a link to fyrefestival.com. Soon after, Plaintiff and another friend decided to purchase tickets to Weekend 1 of Fyre Festival for $1,100 per person through fyrefestival.com. Plaintiff and his friend thought that Fyre Festival would be a once-in-a-lifetime experience and a fun vacation. As a result, Plaintiff made travel arrangements from his home in Cranford, New Jersey to Miami, Florida. Plaintiff arrived in Miami, Florida on Friday, April 28, 2017 and soon after learned that his complimentary flight from Miami, Florida to the island in the Exumas, Bahamas had been cancelled and that Fyre Festival was postponed. Had Plaintiff known the truth regarding Defendants' false representations, he would have not purchased a ticket to Weekend 1 of Fyre Festival nor would he have made travel arrangements to and from Miami, Florida.

14.     At all times relevant to this action, Defendant, Fyre Media, Inc. was a Delaware corporation.

15.     At all times relevant to this action, Defendant, Fyre Festival LLC was a Delaware limited liability company.

16.     Upon information and belief, Defendant, Jeffrey Atkins ("Atkins"), was the co-founder of Fyre Media, Inc. and a citizen of the State of New York at all times relevant to this action.

17. Upon information and belief, Defendant, Billy McFarland ("McFarland"), was the co-founder of Fyre Media, Inc. and a citizen of the State of New York at all times relevant to this action.

## FACTUAL ALLEGATIONS

18. Fyre Festival was promoted as a once-in-a-lifetime luxury music and art festival on a remote island located in the Exumas, Bahamas. Fyre Festival was supposed to take place over the course of two weekends. Weekend 1 was scheduled for April 28-30 and Weekend 2 was scheduled for May 5-7. At all times relevant to this Complaint, tickets to Weekend 1 of Fyre Festival were available for purchase by Plaintiff and Class members.

19. On or around December 12, 2016, Fyre Media, Inc. launched a website and Instagram viral marketing campaign for Fyre Festival. At all times relevant to this Complaint, Defendants widely promoted Fyre Festival on the internet and through social media platforms like Facebook, Instagram and YouTube. As part of its viral campaign, Fyre Festival enlisted the help of Instagram influencers including Kendall Jenner, Bella Hadid and Emily Ratajkowski. As a result, thousands of tickets were sold for both weekends of Fyre Festival.

20. Tickets to Fyre Festival were sold in packages. Lower-tiered ticket packages were offered and sold for approximately $1,100 per person per weekend; however, this price increased to several thousands of dollars as the event drew closer. Fyre Festival also advertised and sold higher end packages ranging from $12,499 per person per weekend to $49,999 per person per weekend. All packages included complimentary roundtrip flights between Miami, Florida and the island in the Exumas, Bahamas, festival tickets and lodging on the island. Fyre Festival attendees were responsible for their own travel arrangements from their individual home states to Miami, Florida. Additionally, Festival attendees could amplify their experience by purchasing excursions and other VIP events in addition to their ticket.

21.     Fyre Festival attendees began to arrive on the remote island on the eve of Fyre Festival on Thursday, April 27, 2017. Festival attendees expected a luxury experience; however, they instead encountered the opposite. The island woefully lacked basic infrastructure such as fresh water, plumbing and lodging. As a result, on Friday, April 29, 2017, the Fyre Festival organizers removed all content from FyreFestival.com and posted a message stating that Fyre Festival attendees who made it to the island were being sent back to Miami and that Fyre Festival would be postponed. Also, Fyre Festival attendees who had not yet made it to the island in the Exumas, Bahamas were forced to make their own lodging arrangements in Miami, Florida.

22.     Later in the day on April 29, 2017, the Fyre Festival organizers released another statement on FyreFestival.com. In the statement, the organizers admitted that they were overwhelmed and incapable of providing the experience that it promised the festival's attendees. The Fyre Festival organizers also stated that Fyre Festival would be postponed until 2018 and would take place at a United States beach venue. Lastly, the Fyre Festival organizers stated, "All festival goers this year will be refunded in full. We will be working on refunds over the next few days and will be in touch directly with guests with more details. Also, all guests from this year will have free VIP passes to next year's festival." To date, no refunds have been issued.

23.     While Defendants claim that the postponement of Fyre Festival was unforeseeable, Defendants knew well in advance that the festival was severely under-equipped and could not meet the expectations of the festival attendees. Defendants were well aware that the island had no infrastructure and could not safely accommodate festival attendees. Specifically, the few contractors that were retained by Defendants had refused to work because

#9118887.1

they had not been paid. As these problems started to come to light in the month leading up to Fyre Festival, many people began to question the intentions of the Defendants. Despite this knowledge, Defendants continued to promote Fyre Festival heavily on the Internet and through their social media channels.

## CLASS DEFINITIONS

24. Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of Class(es) against Defendants for violations of (a) federal law and (b) New Jersey law, as defined below.

    (a)    Nationwide Class

All consumers in the United States who purchased tickets to Weekend 1 of Fyre Festival.

Excluded from the Nationwide Class are Defendants and their officers, directors and employees and those who purchased tickets to Weekend 1 of Fyre Festival for the purpose of resale.

25. Alternatively, Plaintiff brings this action on behalf of himself and all other similarly situated New Jersey consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

    (b)    New Jersey Class

All New Jersey consumers who purchased tickets to Weekend 1 of Fyre Festival.

Excluded from the New Jersey Class are Defendants and their officers, directors and employees, and those who purchased tickets to Weekend 1 of Fyre Festival for the purpose of resale.

26. Rule 23(a)(1): Numerosity. The members of the Nationwide Class and the New Jersey Class are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Nationwide Class and the New Jersey Class each

contain thousands of purchasers of tickets to Weekend 1 of Fyre Festival who have been damaged by Defendants' conduct, as alleged herein. The precise number of members of the Nationwide Class and the New Jersey Class is unknown to Plaintiff.

27. Rule 23(a)(2): Existence and Predominance of Common Questions of Law and Fact. This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Nationwide Class and the New Jersey Class. These common legal and factual questions include, but are not limited to, the following:

(a) whether Defendants' representations, as alleged herein, are false and/or misleading, or objectively reasonable likely to deceive;

(b) whether Defendants' alleged conduct violates federal and/or New Jersey law;

(c) whether Defendants engaged in false or misleading advertising;

(d) whether this is a violation of the NJCFA; and

(e) whether Plaintiff and members of the Nationwide Class and the New Jersey Class are entitled to recover damages and ascertainable losses and, if so, in what amount(s).

28. Rule 23(a)(3): Typicality. Plaintiff's claims are typical of the claims of the members of the of the Nationwide Class and the New Jersey Class because, *inter alia,* all Class members were injured through the uniform misconduct described above and were subject to Defendants' representations. Plaintiff is also advancing the same claims and legal theories on behalf of himself and all members of the Nationwide Class and the New Jersey Class.

29. Rule 23(a)(4): Adequacy of Representation. Plaintiff will fairly and adequately protect the interests of the members of the Nationwide Class and the New Jersey Class. Plaintiff has retained counsel experienced in complex consumer class action litigation,

and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Nationwide Class and the New Jersey Class.

30. Rule 23(b)(3): Superiority. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual members of the Nationwide Class and the New Jersey Class is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for members of the Nationwide Class and the New Jersey Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if members of the Nationwide Class and the New Jersey Class could afford such individualized litigation, the Court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

## CAUSES OF ACTION
## COUNT I

### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
(Deception by Omission of Material Facts)
(Alleged Against All Defendants)

31. Plaintiff, on behalf of himself, the members of the Nationwide Class and the New Jersey Class, hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

32. This claim, which asserts violations of the New Jersey Consumer Fraud Act (the "**NJCFA**"), N.J. STAT. ANN. § 56:8-1 *et seq.*, is asserted against each of the Defendants based on their conduct described above.

33. Plaintiff, the members of the Nationwide Class and the New Jersey Class, and each of the Defendants are "persons," within the meaning of Section 56:8-1(d) of the NJCFA.

34. Tickets to Weekend 1 of Fyre Festival was directly offered to the public for sale and, thus, was "merchandise," within the meaning of Section 56:8-1(c) of the NJCFA.

35. The conduct of Defendants, as alleged herein, constitutes an unlawful practice that occurred in connection with the sale and or advertisement of merchandise, within the meaning of Section 56:8-2 of the NJCFA.

36. Section 56:8-2 of the NJCFA prohibits "the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…."

37. Defendants' deceptive omissions, concealment and suppression of material fact, as described within, violated the NJCFA.

38. Prior to Plaintiff's, the Nationwide Class' and the New Jersey Class' purchase of tickets to Weekend 1 of Fyre Festival, Defendants violated the NJCFA by omitting material facts relating to the infrastructure of the island in the Exumas, Bahamas where Fyre Festival was supposed to take place. Specifically, Defendants failed to build the proper infrastructure on the island and failed to disclose this to the public. Despite this, Defendants continued to promote Fyre Festival knowing well in advance of the event that they could not

deliver what they had promised the festival attendees as set forth in Paragraphs 18-23 above. Defendants omissions had the capacity to, and did, deceive the public and cause injury to Plaintiff, the members of the Nationwide Class and the New Jersey Class.

39. Had Plaintiff, the members of the Nationwide Class and the New Jersey Class known the truth about Defendants' omissions, they would not have purchased tickets to Weekend 1 of Fyre Festival and would not have traveled from their home states to Miami, Florida.

40. As a direct result of Defendants' actions and omissions of material facts, Plaintiff, the members of the Nationwide Class and the New Jersey Class did not obtain the value of the merchandise and/or services for which they paid; were induced to make purchases that they otherwise would not have; and lost their ability to make an informed and reasoned purchasing decision.

41. By way of the foregoing, Defendants have engaged in the knowing concealment, suppression and omission of material facts with intent that others act upon such concealment, suppression and omission, in connection with the sale or advertisement of any merchandise. Through their uniform concealment and suppression of material facts, Defendants engaged in deceptive conduct which created a likelihood of confusion or misunderstanding on the part of Plaintiff, the members of the Nationwide Class and the New Jersey Class.

42. The NJCFA is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies.

43. Under Section 56:8-19 of the NJCFA, Plaintiff, the members of the Nationwide Class and the New Jersey Class have standing to pursue this claim because they suffered an ascertainable loss resulting from Defendants' conduct. As a direct and proximate cause of Defendants' omissions, which constitute deceptive trade practices and/or consumer fraud, as herein alleged, Plaintiff, the members of the Nationwide Class and the New Jersey Class have been damaged and suffered ascertainable losses measured by the cost of the cost of their Fyre Festival tickets, thereby entitling them to recover compensatory damages, restitution, disgorgement, refunds of moneys, interest, treble damages, punitive damages, reasonable attorneys' fees, filing fees and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

**COUNT II**

**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(Deception by Misrepresentation)**
**(Alleged Against All Defendants)**

44. Plaintiff, on behalf of himself, the members of the Nationwide Class and the New Jersey Class, hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

45. This claim, which asserts violations of the New Jersey Consumer Fraud Act (the "**NJCFA**"), N.J. STAT. ANN. § 56:8-2 *et seq.*, is asserted against each of the Defendants based on their conduct described above.

46. The conduct of the Defendants, as alleged herein, constitutes an unlawful practice that occurred in connection with the sale and or advertisement of merchandise, within the meaning of Section 56:8-2 of the NJCFA.

47. The NJCFA is written in the disjunctive so claims based on affirmative misrepresentations, is actionable independently and in addition to, NJCFA claims based on the Defendants' omission of material facts.

48. Section 56:8-2 of the NJCFA prohibits "[t]he act, use or employment by any person of any ... false pretense, false promise, [and] misrepresentation ... in connection with the sale or advertisement of any merchandise...."

49. The Defendants violated the NJCFA by using or employing false pretenses and misrepresentations of fact in connection with the sale or advertisement of merchandise.

50. The Defendants deceptively misrepresented to the public, including the Plaintiff, the members of the Nationwide Class and the New Jersey Class that Fyre Festival would take place as scheduled despite knowing well in advance of the event that they could not deliver what they had promised the festival attendees as set forth in Paragraphs 18-23 above. Additionally, Defendants continued to promote Fyre Festival up until the day that it was cancelled.

51. By way of the foregoing, in violation of Section 56:8-2 of the NJCFA, the Defendants knowingly engaged in an unconscionable commercial practice, fraud, false pretense misrepresentation, knowing concealment and the suppression of material facts.

52. Under Section 56:8-19 of the NJCFA, Plaintiff, the members of the Nationwide Class and the New Jersey Class have standing to pursue this claim because they suffered an ascertainable loss resulting from the Defendants' conduct.

53. As a direct and proximate cause of the Defendants' conduct, which constitute deceptive trade practices and/or consumer fraud, as herein alleged, Plaintiff, the

members of the Nationwide Class and the New Jersey Class have been damaged and suffered ascertainable losses measured by the cost of their Weekend 1 Fyre Festival tickets, thereby entitling them to recover compensatory damages, restitution, disgorgement, refunds of moneys, interest, treble damages, punitive damages, reasonable attorneys' fees, filing fees and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

## COUNT III

### BREACH OF CONTRACT
### (Alleged Against All Defendants)

54. Plaintiff, on behalf of himself, the members of the Nationwide Class and the New Jersey Class, hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

55. Plaintiff entered into a contract with Defendants to provide a once-in-a-lifetime luxury music and art festival experience in exchange for money. Plaintiff made payment in consideration for Defendants' promise to provide a once-in-a-lifetime luxury music and art festival experience.

56. Defendants breached the contract by failing to provide basic infrastructure such as fresh water, plumbing and lodging, instructing the musical acts not to come to Fyre Festival and by cancelling Fyre Festival.

57. Plaintiff spent thousands of dollars on his ticket and travel arrangements to Fyre Festival.

58. After Defendants failed to perform, Plaintiff spent hundreds of dollars on lodging in Miami, Florida after the event was cancelled.

## COUNT IV

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
(Alleged Against All Defendants)

59. Plaintiff, on behalf of himself, the members of the Nationwide Class and the New Jersey Class, hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

60. Plaintiff entered into a contract with Defendants to provide a once-in-a-lifetime luxury music and art festival experience in exchange for money. Plaintiff made payment in consideration for Defendants' promise to provide a once-in-a-lifetime luxury music and art festival experience.

61. Defendants breached the contract by failing to provide basic infrastructure such as fresh water, plumbing and lodging, instructing the musical acts not to come to Fyre Festival and by cancelling Fyre Festival.

62. Plaintiff spent thousands of dollars on his ticket and travel arrangements to Fyre Festival.

63. After Defendants failed to perform, Plaintiff spent hundreds of dollars on lodging in Miami, Florida after the event was cancelled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment:

    a. Certifying the case as a class action pursuant to FED. R. CIV. P. 23(a) and (b) and appointing the New Jersey Plaintiffs as class representatives and the undersigned counsel as class counsel;

    b. Awarding all remedies available pursuant to Sections 56:8-2 and 56:8-19 of the NJCFA;

    c. Requiring restitution, refunds and reimbursement of the cost of tickets to Weekend 1 of Fyre Festival;

#9118887.1

d. Awarding compensatory damages;

e. Awarding pre-judgment and post-judgment interest;

f. Awarding reasonable attorneys' fees, filing fees and costs of suit;

g. Awarding treble damages, as may be appropriate and permissible under applicable law;

h. Awarding punitive damages, as may be appropriate and permissible under applicable law including Section 56:8-19 of the NJCFA and the New Jersey Punitive Damages Act, N.J. STAT. ANN. § 2A:15-5.9 *et seq.*, according to proof;

i. Requiring disgorgement of any unjustly obtained monies or gains; and

j. Granting any and all other relief as this Court deems just and proper at law or equity.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: May 2, 2017

WILENTZ, GOLDMAN & SPITZER, P.A.

By _/s/ Philip A. Tortoreti_
Philip A. Tortoreti, Esq.
Andrew Grous, Esq.

90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095
Telephone: (732) 636-8000
Facsimile: (732) 726-6686
E-mail: PTortoreti@wilentz.com

*Attorneys for Plaintiff*